**LYNDA LEE LINGENFELSER,**

   **Plaintiff,**

**v.**                 **Case No:  6:16-cv-921-Orl-DCI**

**COMMISSIONER OF SOCIAL
SECURITY,**

   **Defendant.**

---

## MEMORANDUM OF DECISION

  Lynda Lee Lingenfelser (Claimant) appeals the Commissioner of Social Security's final decision denying her application for disability benefits.  Doc. 1.  Claimant argues that the Administrative Law Judge (ALJ) erred by: 1) failing to include all of Claimant's limitations in the hypothetical question posed to the vocational expert; 2) failing to properly analyze Claimant's credibility; 3) failing to consider medical records that post-dated Claimant's date of last insured; 4) relying upon the opinion of Dr. Robert Steele, M.D., a non-examining state agency consultant; 5) formulating a residual functional capacity (RFC) for Claimant that was not supported by the opinion of an examining physician or substantial evidence; 6) failing to fully develop the record; 7) failing to consider Claimant's impairments in combination; and 8) failing to consider an opinion by Dr. Stephen Oh, M.D., a treating psychiatrist whose opinion Claimant submitted to the Commissioner after the conclusion of the ALJ's hearing.  Doc. 23 at 13, 23, 36, 43, 47, 51, 55, 57.  Claimant requests that the matter be reversed and remanded for further proceedings.  *Id*. at 27.  For the reasons set forth below, the Commissioner's final decision is **AFFIRMED**.

# I.    PROCEDURAL HISTORY.

This case stems from Claimant's application for a three-month period of disability and disability insurance benefits (DIB).  R. 20.  Claimant alleged a disability onset date of June 30, 2011.  *Id.*  Claimant's application was denied on initial review, and on reconsideration.  *Id.*  The matter then proceeded before the ALJ.  The ALJ held a hearing on March 17, 2015, at which Claimant was represented by counsel.  *Id.*  The ALJ entered his decision on April 22, 2015, and the Appeals Council denied review on March 25, 2016.  R. 1-4; 20-30.

# II.    THE ALJ'S DECISION.

The ALJ found that Claimant had the following severe impairments through the date of last insured: tinnitus, cervical disc disease, lumbar disc disease, post-traumatic stress disorder, generalized anxiety disorder with panic attacks, obsessive compulsive disorder, fibromyalgia with neuropathy, carpal tunnel syndrome and migraine headaches.  R. 22.  The ALJ did not find that Claimant had any non-severe impairments.  *Id.*

The ALJ found that Claimant does not have an impairment or combination of impairments that meets or medically equals any listed impairment.  R. 22-23.

The ALJ found that Claimant has the residual functional capacity (RFC) to perform light work as defined by 20 C.F.R. § 404.1567(b),[1] with the following specific limitations:

> [C]laimant requires the option to sit or stand for a change of position at least every 30 minutes; this is a brief positional change lasting no more than three or four minutes at a time. The claimant can occasionally use hand or foot controls. The claimant can

---

[1] Light work is defined as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities."  20 C.F.R. § 404.1567(b).

occasionally perform overhead reaching and perform frequent handling, fingering and feeling. The claimant can occasionally climb ramps, stairs and kneel but never crawl or climb ladders or scaffolds. The claimant can frequently balance, crouch and stoop. The claimant must avoid work around unprotected heights, moving mechanical parts, temperature extremes and environments with more than a moderate level of noise. The claimant is limited to performing simple tasks and work-related decision-making. The claimant is limited to only occasional interaction with coworkers, supervisors and the public.

R. 24. The ALJ found that Claimant was unable to perform her past relevant work as a computer operator. R. 29. The ALJ found that Claimant could perform other work in the national economy. R. 29-30. Thus, the ALJ found that Claimant was not disabled between her alleged onset date through the date of last insured. R. 30.

## III.    STANDARD OF REVIEW.

The scope of the Court's review is limited to determining whether the Commissioner applied the correct legal standards, and whether the Commissioner's findings of fact are supported by substantial evidence. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). The Commissioner's findings of fact are conclusive if they are supported by substantial evidence, 42 U.S.C. § 405(g), which is defined as "more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). The Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's decision, when determining whether the decision is supported by substantial evidence. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). The court may not reweigh evidence or substitute its judgment for that of the Commissioner, and, even if the evidence preponderates against the Commissioner's decision, the reviewing court must affirm it if the decision is supported by substantial evidence. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

## IV. ANALYSIS.

### a. The Hypothetical Question Posed to the Vocational Expert.

Claimant argues that the ALJ failed to present a hypothetical to the vocational expert that contained the full range of her impairments and restrictions. Doc. 23 at 13-16. Claimant cited no legal authority from this Circuit in support of her contentions. The Commissioner maintains that 1) the ALJ was not required to include Claimant's diagnoses or impairments in the hypothetical to the vocational expert, 2) that the hypothetical posed to the vocational expert was complete and accurate, despite the fact that it did not contain Claimant's diagnoses and impairments, 3) the ALJ was not required to accept an answer to a hypothetical question that contained limitations that the ALJ had rejected, and 4) the ALJ did not have to include findings from the step two psychiatric review technique in the step four question to the vocational expert. *Id*. at 18-23.

The ALJ may consider the testimony of a vocational expert in determining whether the claimant can perform other jobs in the national economy. *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004). The ALJ is required to pose hypothetical questions that are accurate and that include all of the claimant's functional limitations. *See Pendley v. Heckler*, 767 F.2d 1561, 1563 (11th Cir. 1985). The ALJ, however, is not required to include "each and every symptom" of the claimant's impairments, *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1270 (11th Cir. 2007), or "findings . . . that the ALJ . . . properly rejected as unsupported" in the hypothetical question, *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004). Where the ALJ relies on the vocational expert's testimony, but fails to include all the claimant's functional limitations in the hypothetical question, the final decision is not supported by substantial evidence. *See Pendley*, 767 F.2d at 1562 (quoting *Brenem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980)).

The ALJ posed a hypothetical to the vocational expert that was consistent with his RFC determination. R. 76-78. The vocational expert, based on the ALJ's hypothetical, found that Claimant would be able to perform the following representative jobs: warehouse checker, assembler (small parts), and labeler. R. 77-78. Claimant's attorney, subsequently, posed several hypothetical questions to the vocational expert that included additional limitations not contained within the RFC; which resulted in the vocational expert stating that based on Claimant's attorney's hypotheticals Claimant could not perform the jobs he identified in response to the ALJ's hypothetical. R. 79. The ALJ found the vocational expert's testimony in response to his hypothetical credible, and relied on that testimony in determining that Claimant could perform other work in the national economy. R. 29-30. The ALJ committed no error with respect to his hypothetical question to the vocational expert. Claimant argues that the ALJ's hypothetical question should have included a full range of her mental and physical impairments as evidenced by the medical records and, specifically, should have included "migraine headaches," "panic attacks, obsessive compulsive disorders, affecting [Claimant's] ability to concentrate," and a "virtual inability" to be around people at all. Doc. 23 at 16. All of the additional limitations Claimant asserts should have been included are those set forth in Claimant's testimony – Claimant cites no additional support for these alleged limitations. The ALJ, as will be discussed *infra*,[2] considered Claimant's testimony and found her testimony not entirely credible. R. 25. The Court concludes that the ALJ's credibility determination was supported by substantial evidence. *See infra*. Thus, the ALJ properly rejected Claimant's testimony concerning her physical and mental limitations, and, consequently, was not required to include those limitations in his hypothetical to the vocational expert. *Crawford*, 363 F.3d at 1161.

---

[2] Claimant's issues are addressed in the order in which they were presented to the Court.

Further, the Court agrees with the Commissioner that the ALJ was under no obligation to include diagnoses or impairments within the hypothetical question to the vocational expert. "[T]he mere existence of these impairments does not reveal the extent to which they limit her ability to work or undermine the ALJ's determination in that regard." *Moore v. Barnhart*, 405 F.3d 1208, 1213 (11th Cir. 2005) (citing *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir.1986) ("'severity' of a medically ascertained disability must be measured in terms of its effect upon ability to work")). The ALJ was simply required to include Claimant's functional limitations that were supported by substantial evidence. *See Pendley*, 767 F.2d at1563. Here, the ALJ posed the following hypothetical question:

> Q: Assume a hypothetical individual with the past job that you've just described. Further, assume an individual who's limited to less than a full range of light work; who has the ability to lift and carry 20 pounds occasionally, 10 pounds frequently; to sit for up to six hours, stand for up to six hours, and walk for up to six hours; (INAUDIBLE) occasional use of foot controls and hand controls; who's also limited to occasional (INAUDIBLE); handling, fingering, and feeling is all at the frequent level; who could occasionally climb ramps and stairs, never climbing ladders and scaffolds; balancing, stooping, and crouching would be reduced to frequent; kneeling would be occasional; crawling would be never; should not work around unprotected heights or moving mechanical parts; should not work (INAUDIBLE) temperature extremes; who also should not work anywhere where there is more than a moderate level of noise; limited to simple tasks, simple work-related decisions; and no more than occasional interaction with supervisors/coworkers/public. Could that hypothetical -- time off task could be accommodated by normal breaks. Could that hypothetical individual perform any work in any of the past jobs that you just described?
>
> A: No, sir.
>
> Q: Could that hypothetical individual perform any other work (INAUDIBLE)?
>
> A:      Yes.

R. 77.  The hypothetical question posed to the vocational expert contained all of the functional limitations contained within the RFC, which, as will be discussed *infra*, the Court finds is supported by substantial evidence.  There was no requirement that the ALJ consider additional hypothetical questions posed by the Claimant that contained functional limitations properly rejected by the ALJ.  *See, e.g.*, *Evans v. Comm'r, Soc. Sec. Admin.*, 551 F. App'x 521, 525(11th Cir. 2014) ("Based on his finding that Evans only had a moderate limitation in the ability to concentrate, the posed hypothetical adequately comprised all of Evans's impairments.  The hypothetical was consistent with the medical evidence and opinions of the majority of the physicians.  Thus, the record supports the hypothetical that the ALJ relied upon, and the Appeals Council did not err in ignoring the VE's response to Evans's proposed hypothetical.") (internal citation omitted); *Beegle v. Soc. Sec. Admin., Comm'r*, 482 F. App'x 483, 489 (11th Cir. 2012) ("ALJ did not need to rely upon McDaniel's answer to this hypothetical question because elements of that hypothetical question were unsupported by the record.").  Therefore, the Court finds that the ALJ committed no error with respect to his hypothetical question to the vocational expert.

### b. Credibility.

Claimant argues that the ALJ erred in analyzing Claimant's credibility because the ALJ gave insufficient reasons for rejecting Claimant's testimony and the evidence of record supported Claimant's testimony.  Doc. 23 at 23-31.  Claimant also asserts that the ALJ failed to follow SSR 96-7p.  Doc. 23 at 23-31.  Claimant cited no legal authority in support of her contentions.  The Commissioner argues that the ALJ properly considered Claimant's credibility and that the ALJ's credibility determination is supported by substantial evidence.  *Id*. at 31-35.

A claimant may establish "disability through his own testimony of pain or other subjective symptoms." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). A claimant seeking to establish disability through his or her own testimony must show:

> (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain.

*Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (per curiam). If the ALJ determines that the claimant has a medically determinable impairment that could reasonably produce the claimant's alleged pain or other symptoms, the ALJ must then evaluate the extent to which the intensity and persistence of those symptoms limit the claimant's ability to work. 20 C.F.R. § 416.929(c)(1). In doing so, the ALJ considers a variety of evidence, including, but not limited to, the claimant's history, the medical signs and laboratory findings, the claimant's statements, medical source opinions, and other evidence of how the pain affects the claimant's daily activities and ability to work. *Id*. at § 416.929(c)(1)-(3). "If the ALJ decides not to credit a claimant's testimony as to her pain, he must articulate explicit and adequate reasons for doing so." *Foote*, 67 F.3d at 1561-62. The Court will not disturb a clearly articulated credibility finding that is supported by substantial evidence. *Id*. at 1562.

Claimant, without citation to legal authority, makes an argument that includes elements challenging as inadequate the reasons cited by the ALJ in support of his credibility determination, stating that the evidence actually supports Claimant's testimony, and asserting that the ALJ failed to follow SSR 96-7p. The Court is unpersuaded, and finds that the ALJ properly considered Claimant's credibility and that the ALJ's credibility determination is supported by substantial evidence.

A Court in this District recently explained the relevance of SSR 96-7p in the ALJ's credibility determination:

> The Regulations provide that once such an impairment is established, all evidence about the intensity, persistence, and functionally limiting effects of pain or other symptoms must be considered in addition to the medical signs and laboratory findings in deciding the issue of disability." *Foote v. Chater,* 67 F.3d 1553, 1561 (11th Cir. 1995) (citing 20 C.F.R. § 404.1529).
>
> In other words, once the issue becomes one of credibility and, as set forth in SSR 96–7p, in recognition of the fact that a claimant's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by objective medical evidence alone, the ALJ in assessing credibility must consider in addition to the objective medical evidence the other factors/evidence set forth in 20 C.F.R. § 404.1529(c). "When evaluating a claimant's subjective symptoms, the ALJ must consider the following factors: (i) the claimant's 'daily activities; (ii) the location, duration, frequency, and intensity of the [claimant's] pain or other symptoms; (iii)[p]recipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of any medication the [claimant took] to alleviate pain or other symptoms; (v) treatment, other than medication, [the claimant] received for relief ... of pain or other symptoms; and (vi) any measures the claimant personally used to relieve pain or other symptoms.'" *Leiter v. Commissioner of Social Security Administration,* 377 Fed.Appx. 944, 947 (11th Cir. May 6, 2010) (quoting 20 C.F.R. §§ 404.1529(c)(3) . . . . Pursuant to the SSA regulations and Rulings, the claimant's work history and the consistency of her subjective statements are also relevant to the credibility determination. 20 C.F.R. § 404.1527(c)(3); SSR 96–7p, 1996 WL 374186, at *5.

*Lafond v. Comm'r of Soc. Sec.*, No. 6:14-cv-1001-Orl-DAB, 2015 WL 4076943, at *3 (M.D. Fla. July 2, 2015).

Here, The ALJ considered Claimant's testimony and her credibility, explaining:

> After careful consideration of the evidence, the [ALJ] finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision.

The severity of the symptoms and the alleged effect on function is not entirely consistent with the total medical and nonmedical evidence, including statements by the claimant and others, observations regarding activities of daily living, and alternations of usual behavior or habits. The claimant testified that she is able to live alone and perform household chores such as caring for her pets, dusting, making coffee, shopping for food and occasionally cooking. She testified that she takes pictures of animals through the windows of her home. She testified that she does not like to leave her home, but does go to the grocery store by herself. Such a description of the claimant's daily activities and capacity for social functioning suggest a greater capacity tha[n] that alleged by the claimant during the hearing testimony and that would preclude all sustained work activity.

Under 20 CFR 404.1529 and 416.929 as well as Social Security Ruling 96-7p, the [ALJ] must also consider the claimant's work history in assessing her credibility. The [ALJ] finds that the claimant's sporadic work history does not lend great support to the credibility of her statements about her ability to work because of pain and other subjective complaints.

In addition to the inconsistency between the claimant's allegations and her activities as described in the previous paragraphs, the medical evidence does not support the severity of the claimant's symptoms or limitations as alleged. Although the claimant has received treatment for the allegedly disabling impairments, that treatment has been essentially routine and conservative in nature. The medical evidence of record reflects minimal objective findings of disabling limitations, and no history of surgery or injections for relief of the claimant's back pain. She was diagnosed with cervical disc disease, which was not that significant, and she had carpal tunnel syndrome corrected by surgery. Additionally, when the claimant is maintained on her medication, her symptoms have improved significantly, according to both her subjective reports and the objective evidence documented during those times.

There is no indication the claimant required any emergency room treatment or inpatient hospitalization for any mental health problem. The claimant attended counseling on a sporadic basis prior to September 2011. The [ALJ] has accounted for the claimant's anxiety with RFC limitations for simple work and no more than occasional interaction with the public, supervisors and co-workers.

R. 27.

- 10 -

The ALJ properly considered Claimant's credibility pursuant to SSR 96-7p. The ALJ found that Claimant's allegations concerning the intensity, persistence, and limiting effects of her symptoms were "not fully credible" based on inconsistencies between her claimed symptoms and her daily activities and work history, which the ALJ stated showed a greater capacity for activity and social functioning than alleged by Claimant in her testimony. *Id*. Further, the ALJ stated that the medical evidence of record was inconsistent with Claimant's alleged symptoms. *Id*. In particular, the ALJ stated that Claimant's treatment had essentially been routine and conservative, that there were minimal objective findings of disabling limitations, that some impairments had been corrected by surgery, and that, when Claimant maintains her medication, her reported symptoms had improved significantly. *Id*. In making that credibility determination, the ALJ cited to 96-7p and explicitly considered many of the factors set forth in 96-7p. The ALJ is not required to explicitly address each factor in his decision. *See Lawton v. Comm'r of Soc. Sec.*, 431 F. App'x 830, 833 (11th Cir. 2011). Accordingly, the ALJ's consideration of Claimant's credibility complied with 96-7p.

Second, substantial evidence supported the ALJ's credibility determination. It appears that Claimant is arguing that the evidence as a whole preponderates in favor of finding Claimant credible. Such an argument is without merit. The issue is not whether there is evidence supporting Claimant's testimony concerning her symptoms, but whether there is substantial evidence, when viewing the record as a whole, to support the ALJ's reasons for discounting Claimant's credibility. *See Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991) ("Even if we find that the evidence preponderates against the Secretary's decision, we must affirm if the decision is supported by substantial evidence.") (citation omitted). The medical records identified in the ALJ's discussion of his credibility determination provide substantial evidence in support of that determination.

Indeed, the ALJ explained the inconsistencies between Claimant's claimed symptoms and her daily activities and work history, which the ALJ stated showed a greater capacity for activity and social functioning than alleged by Claimant in her testimony. R. 27. Further, the ALJ stated that the medical evidence of record was inconsistent with Claimant's alleged symptoms. *Id.* In particular, the ALJ stated that Claimant's treatment had essentially been routine and conservative, that there were minimal objective findings of disabling limitations, that some impairments had been corrected by surgery, and that, when Claimant maintains her medication, her reported symptoms had improved significantly. *Id.* The Court disagrees with Claimant that the foregoing reasons are inadequate to provide substantial evidence to support the ALJ's credibility determination.

Further, the record as a whole, and the ALJ's discussion of the other medical records, provides substantial evidence for the ALJ's credibility determination. Claimant asserted that she feared people, did not like to go outside her home, and had problems paying attention and recalling information. R. 25. But the ALJ found that Claimant was able to live alone and performed daily activities that included household chores, grocery shopping, caring for pets, making coffee, and occasional cooking. R. 25, 27. And the ALJ found minimal objective findings of disabling limitations, such as findings of 5/5 strength, normal gait, symmetric reflexes, and x-rays that showed that her cervical disc disease was not significant. R. 27, 463, 1457.

The Court, having considered Claimant's arguments challenging the ALJ's credibility determination, finds that Claimant's arguments are unavailing. The Court finds that the reasons articulated by the ALJ support his credibility determination, and are supported by substantial evidence. Therefore, the Court finds that the ALJ's credibility determination is supported by substantial evidence.

### c. *Medical Records Post-Dating Claimant's Date of Last Insured.*

Claimant asserts that the ALJ erred by not considering medical records from after the date of last insured. Doc. 23 at 36-41. Specifically, Claimant "contends that records generated subsequent to the date last insured note a follow-up for diagnoses referenced prior to the date of last insured which did [sic.] ALJ should have considered or in the alternative should have provided reasoning as to why those records were not considered." *Id*. at 36. Claimant cited no legal authority from this Circuit in arguing that the ALJ erred by "not considering" the medical records generated after the date of last insured. The Commissioner maintains that the ALJ properly considered and weighed the medical records post-dating Claimant's date of last insured, giving those records "no weight." Doc. 23 at 41-43. In addition, the Commissioner (directing the Court to several, relevant Eleventh Circuit cases) argues that that medical treatment that Claimant received after the date of last insured is not relevant to determining whether Claimant was disabled during (or before) the three-month period at issue in this case. *Id*.

"When determining whether a claimant is disabled, an ALJ should consider evidence postdating an individual's date of last insured as it may be relevant so long as it bears 'upon the severity of the claimant's condition before the expiration of his or her insured status.'" *Gluchowski v. Comm'r of Soc. Sec.*, No. 8:13-CV-924-T-30MAP, 2014 WL 2916750, at *3 (M.D. Fla. June 26, 2014) (quoting *Ward v. Astrue*, 2008 WL 1994978, at *4 (M.D. Fla. May 8, 2008) (quoting *Basinger v. Heckler*, 725 F.2d 1166, 1169 (8th Cir.1984))); *see also Wright v. Colvin*, 2015 WL 526806, at *10 (N.D. Ala. Feb. 9, 2015) (finding that record evidence related to a doctor's "assessment is immaterial because it does not relate to, or reflect on, the disability period"). The Eleventh Circuit has found that *retrospective* diagnoses are only entitled to deference where corroborated by evidence contemporaneous with the relevant period. *Wright*, 2015 WL 526806,

at *10 (citing *Mason v. Comm'r of Soc. Sec.*, 430 F. App'x 830, 832 (11th Cir. 2011)) (emphasis added). In *Mason*, the Eleventh Circuit explained that a "*retrospective* diagnosis . . . is a physician's post-insured-date opinion that the claimant suffered a disabling condition *prior to the insured date*." *Mason*, 430 F. App'x at 832 (emphasis added). The Eleventh Circuit stated that because the doctor "did not assess Mason's medical condition until after the relevant disability period, his opinion was a retrospective diagnosis that was not entitled to deference unless corroborated by contemporaneous medical evidence of a disabling condition." *Id*. Outside the context of an explicitly *retrospective* diagnoses, courts in this Circuit have noted repeatedly that medical records post-dating the date of last insured are of little relevance to the ALJ's task of determining disability. *See Caces v. Comm'r, Soc. Sec. Admin.*, 560 F. App'x 936, 940-41 (11th Cir. 2014) (finding that the ALJ correctly gave little weight to the medical records of a doctor who treated claimant "long after his date of last insured has passed"); *Hughes v. Comm'r of Soc. Sec. Admin.*, 486 F. App'x 11, 14 (11th Cir. 2012) (noting that records based upon claimant's mental and physical condition after the date of last insured "were not particularly relevant to whether [claimant] was disabled for purposes of DIB"); *Angle v. Colvin*, 2016 WL 4180878, at *11 (N.D. Ala. Aug. 8, 2016) ("An ALJ's obligation to develop a full and fair record extends to the twelve months prior to the claimant's filing of her application. Otherwise, the ALJ has no duty to order additional medical evidence when there is otherwise sufficient evidence to make a determination on the claimant's claim.") (internal citation omitted); *Jones v. Colvin*, No. 3:15-cv-208-J-34MCR, 2015 WL 9694507, at *6 (M.D. Fla. Dec. 15, 2015), *report and recommendation adopted*, 2016 WL 111628 (M.D. Fla. Jan. 11, 2016) ("[O]pinions . . . rendered after Plaintiff's date of last insured are of little relevance to the ALJ's disability determination and Plaintiff appears to recognize as much.").

In his decision, the ALJ addressed the medical records post-dating the date of last insured as follows:

> The remaining records contain medical evidence from a period prior to the claimant's alleged onset date and application date, or after her date last insured. These exhibits have been considered only for the claimant's longitudinal history, but given no weight.

R. 26. Thus, it appears from the face of the ALJ's decision that he did consider the medical records post-dating the date of last insured. The ALJ considered those records in relation to Claimant's "longitudinal history," that is, how Claimant's impairments progressed over time. *See* Stedman's Medical Dictionary 1118-19 (28th ed. 2006). The ALJ not only considered those medical records, he weighed them, giving them no weight. R. 26. On that basis alone, Claimant's assignment of error is due to be denied – Claimant's entire argument rests on the proposition that the ALJ did not consider the records, but the ALJ's decision shows that he did consider and weigh those records.

Further, none of the records identified by Claimant (which the Court will discuss further *infra*) contain a retrospective assessment or diagnosis, "that is, a physician's post-insured-date opinion that the claimant suffered a disabling condition *prior to the insured date*." *Mason*, 430 F. App'x at 832. Thus, to the extent that authority exists supporting an obligation by the ALJ to consider and weigh post-date-of-last-insured medical evidence that contains a retrospective analysis of Claimant's condition prior to the date of last insured, that authority is distinguishable from this case. Claimant identifies no controlling authority that would require the ALJ to consider and weigh evidence unrelated to Claimant's impairments, as those impairments existed prior to the date of last insured. Nor, other than through speculation, does Claimant explain how the records detailing her medical treatment months and years after her date of last insured bear upon the severity of her impairments prior to the date of last insured. On this basis alone, Claimant's assignment of error is due to be denied as well.

Regardless, the Court will discuss the records at issue, which the Court finds – given the nature of the records and Claimant's impairments – did not warrant any further consideration than that given them by the ALJ in this case.

In asserting that the ALJ erred in failing to weigh records post-dating the date of last insured, Claimant actually identified and provided citations to several categories of records. Doc. 23 at 36-39.

First, Claimant identifies January 2012 and March 2012 records from Dr. James A. Scott, M.D., Ph.D., of Neurology Associates of Ormond Beach. *Id.* at 36-37.[3] It appears from the record that Claimant may have begun treating with Dr. Scott in approximately December 2011, and that he treated Claimant from December 2011 through September 2012. R. 526-39; 632. On January 30, 2012, Dr. Scott discussed an MRI that revealed evidence of degenerative disc disease, a bulging disc, and facet arthritic changes. R. 527. Dr. Scott described the exam as "stable," noted no complaints of pain or muscle spasms, and suggested that Claimant would start physical therapy. *Id.* In March 2012, Claimant presented to Dr. Scott in "quite a bit of pain . . . as well as severe muscle spasms," and Dr. Scott noted a possible "myofascial pain syndrome." R. 531. On April 20, 2012, Claimant presented to Dr. Scott for Electromyography and Nerve Conduction Studies. R. 528. There is no indication that Claimant was then suffering from any debilitating pain or muscle spasms. *Id.* On June 4, 2012, Claimant presented to Dr. Scott for a follow-up. R. 529. Dr. Scott noted that Claimant complained of back and lower extremity pain that was severe "at times." *Id.* Dr. Scott also noted that Claimant had received some benefit from physical therapy and had no weakness or other symptoms, 5/5 strength in all major groups, and symmetric reflexes.

---

[3] Claimant makes what appear to be different arguments based on Dr. Scott's records at R. 526-39 and the records located at R. 540-56. These primarily appear to be duplicate records.

*Id.*  Dr. Scott recommended that Claimant take vitamin B12 and start going to additional physical therapy.  *Id.*  On September 4, 2012, Claimant presented to Dr. Scott for a follow-up, at which Claimant complained of pain and fatigue.  R. 532.  Dr. Scott recounted that Claimant described her pain as severe "at times," but that Claimant had been to physical therapy and pool therapy with some benefits.  *Id.*  Dr. Scott noted Claimant's examination as "stable" and her gait as "normal." *Id.*  Thus, a review of Dr. Scott's records reveals that those records do not contain a retrospective diagnosis or analysis and do not purport to express opinions on Claimant's condition prior to the date of last insured.  To the contrary, the records simply describe Claimant's then-current treatment, taking place months after her date of last insured.  Further, Dr. Scott's records contain absolutely no functional limitations.  Thus, even if the ALJ erred by not more thoroughly discussing those records, that error is harmless.  *See Furman v. Comm'r of Soc. Sec.*, No. 2:14-cv-191-FtM-DNF, 2015 WL 2201719, at *6 (M.D. Fla. May 11, 2015) ("Therefore, even if the ALJ erred in failing to address the medical opinion of Dr. Howard from October 10, 2010, the error was harmless, because the medical records and assessment did not state that they pertained to a time period prior to the date last insured.").

Second, Claimant identifies November 2011 records from Dr. Oh.  Doc. 23 at 37-38; R. 623-38.  In November 15, 2011, Claimant began treating with Dr. Oh and, on that date, Dr. Oh completed an Initial Psychiatric Assessment.  R. 633-38.  In that record, Dr. Oh diagnosed Claimant with a generalized anxiety disorder and attention deficit disorder.  R. 638.  Dr. Oh also assigned Claimant a GAF of 60.  *Id.*  While Claimant described the GAF score of 60 as indicating "severe" symptoms, this is incorrect, as that GAF score indicates only moderate symptoms.  Doc. 23 at 37; *see* Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. Text Revision, 2000) (A GAF score of 51-60 reflects: "Moderate symptoms (e.g., flat

affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers).").  As with Dr. Scott's treatment records, Dr. Oh's record in no way purports to be a retrospective diagnosis or analysis of Claimant's impairments prior to the date of last insured.  In fact, in the "past psychiatric history" portion of Dr. Oh's records simply states, without any further elaboration, that Claimant "saw a counselor."  R. 634.  Further, as with Dr. Scott's records, Dr. Oh's records are records of then-current medical treatment, nothing more.  Dr. Oh's records contain no functional limitations.  Thus, even if the ALJ erred by not more thoroughly discussing those records, that error is harmless.  *See Furman*, 2015 WL 2201719, at *6.

Third, Claimant makes passing reference to a number of medical records from 2013, 2014, and 2015 – records years removed from the date of last insured.  Doc. 23 at 38-39 (citing R. 894-915, 954-1011, 1012-20, 1072-81, 1231-34, 1454-56, 1468-69, 1470-73, 1476-78, 1479-82).  In relation to these records, Claimant asserts in a conclusory and speculative manner that "they support claimant's contention she suffered from those severe symptoms prior to the date of last insured, such that the ALJ should have reviewed them . . . ."  Doc. 23 at 39.  As has already been stated, the ALJ did review and consider them.  Regardless, this Court has reviewed them as well.  None of those records purport to be a retrospective diagnosis or analysis describing Claimant's impairments prior to the date of last insured.  Nor do the records provide any discussion or opinions concerning Claimant's impairments, symptoms, or limitations, as they existed prior to the date of last insured.  Nor does Claimant identify any such connections to the time period prior to the date of last insured, other than through speculation that records evidencing impairments Claimant suffered in 2013, 2014 and 2015 support Claimant's contention that she was disabled prior to September 2011.  *See* Doc. 23 at 35-41.

In sum, the nature of the records at issue is important to the Court's analysis, as is the nature of Claimant's impairments. The records at issue do not involve a retrospective assessment of Claimant's condition prior to the date of last insured. The records are simply medical treatment records concerning treatment that Claimant received months and years after the date of last insured. On their face, the records do not contain opinions that purport to assess Claimant's impairments or functional limitations during the alleged period of disability. Thus, given the nature of the records in this particular case, the ALJ's decision to give them no weight required no further discussion. As to the nature of Claimant's impairments, there is no indication that Claimant's impairments are cyclical in nature, distinguishing this from cases involving impairments such as bi-polar disorder. *See Fay v. Astrue*, No. 8:11-cv-1220-T-JRK, 2012 WL 4471240, at *3-4 (M.D. Fla. Sept. 27, 2012). To the contrary, it appears that Claimant's impairments have generally been described as progressive or degenerative. *See, e.g.*, R. 463. Critically, Claimant identifies no record evidence post-dating the date of last insured that concerns the nature and severity of Claimant's impairments prior to the date of last insured. In fact, Claimant tacitly concedes the absence of such a connection by offering speculation that Claimant "may have been" suffering "an ongoing medical condition" when Claimant was treated months or years after the date of last insured. Doc. 23 at 37 (also arguing that a disease "hypothetically" would have developed prior to the date of last insured).

Finally, Claimant relies upon *Bird v. Comm'r Soc. Sec.*, 699 F.3d 337 (4th Cir. 2012), for the proposition that the ALJ must consider records post-dating the date of last insured. Doc. 23 at 40. Claimant's reliance on that case is misplaced. First, the ALJ here did consider the records at issue – he considered those records, and he gave them no weight. R. 26. Second, in *Bird*, there was no medical evidence prior to the date last insured – the only medical evidence of record post-

dated the date of last insured. 699 F.3d at 339. Here, there was substantial evidence prior to the date last insured, including records from three treating sources. R. 25-28. Third, it does not appear that *Bird* has been cited outside the Fourth Circuit, and district courts within the Fourth Circuit have a limited reading of *Bird* as it related to the consideration of medical records post-dating the date of last insured. *See, e.g.*, *Tolbert v. Colvin*, 2016 WL 6956629, at *3–4 (M.D.N.C. Nov. 28, 2016) (collecting cases interpreting *Bird* and explaining that post-date-of-last-insured medical opinions must relate back to the relevant period and offer a retrospective opinion on the past extent of an impairment, and also noting that *Bird* has been found inapplicable where there was meaningful evidence of disability, or lack thereof, during the DIB coverage period).

Accordingly, the Court finds that the ALJ did not err in considering and weighing the medical records that post-dated Claimant's date of last insured. And, to the extent any error did exist, that error was harmless because Claimant has not identified any functional limitations contained within those records that would undermine the RFC as determined by the ALJ.

### d. The ALJ's Reliance on the Opinion of Dr. Steele.

Claimant contends that the ALJ erred by relying on the opinion of Dr. Steele, a state agency non-examining consultant, or, in the alternative, that Dr. Steele's opinions were not supported by substantial evidence. Doc. 23 at 43-45. Claimant cited no legal authority in support of her contentions. The Commissioner asserts that the ALJ properly evaluated the opinion of Dr. Steele. *Id*. at 45-47.

The opinion of a non-examining physician is generally entitled to little weight and, "taken alone, do[es] not constitute substantial evidence." *Broughton v. Heckler*, 776 F.2d 960, 962 (11th Cir. 1985). The ALJ, however, may rely on a non-examining physician's opinion where it is consistent with the medical and opinion evidence. *See* 20 C.F.R. § 404.1527(c)(4); *see also*

*Crawford*, 363 F.3d at 1160 (finding that the ALJ did not err by relying on a consulting physician's opinion where it was consistent with the medical evidence and findings of the examining physician).

Dr. Steele completed a retrospective consultative report in April 2013. R. 97-108. In doing so, Dr. Steele reviewed many of Claimant's medical records, which were identified in Dr. Steele's report. Dr. Steele found that Claimant had certain alleged impairments prior to her date last insured, including degenerative disc disease, axonal sensory neuropathy, fibromyalgia, carpal tunnel syndrome, tinnitus, and post-traumatic stress disorder. R. 103. Dr. Steele noted Claimant's impairments and symptoms of chronic tingling, diffuse pain, fatigue. R. 106. Dr. Steele also noted Claimant's MRI results, EMG/nerve conduction study results, activities of daily living, blood pressure, weight and height, the lack of joint swelling and tenderness, and her normal gait, normal power and tone, and normal sensory examination. *Id*. Ultimately, Dr. Steele opined that Claimant could perform light work with no other restrictions. R. 105-06. The ALJ considered Dr. Steele's opinion and gave portions of it "significant weight," finding that the opinion was consistent with the record as a whole. R. 28.

Claimant maintains that the ALJ erred by assigning significant weight to Dr. Steele's opinion. Claimant specifically argues that the ALJ erred by assigning more weight to a non-examining physician's opinion than an examining physician's opinion; specifically, Dr. Friedman. Doc. 23 at 44. Claimant then asserts that Dr. Friedman's opinions preponderates in favor of further limitations, although Claimant cites no functional limitations opined to by Dr. Friedman, instead listing symptoms and diagnoses.[4] *Id.*

---

[4] To the extent that Claimant asserts in this section that the ALJ committed an error because "there is no examining physician functional capacity evaluation," that argument will be discussed in the section *infra* concerning the ALJ's duty to develop the record. *See* Doc. 23 at 44.

The Court finds that Claimant has failed to demonstrate that the ALJ erred by assigning portions of Dr. Steele's opinion significant weight. Claimant correctly observes that a non-examining physician's opinion is generally entitled to less weight than the opinion of an examining physician. *Broughton*, 776 F.2d at 962. But Claimant's argument is flawed for at least two reasons. First, the ALJ assigned both the opinion of Dr. Steele and Dr. Friedman significant weight. Second, Claimant fails to identify a single opinion or functional limitation by Dr. Friedman that was not taken into account by the ALJ, or that the ALJ improperly discounted in favor of an opinion by Dr. Steele. Thus, the Court finds that Claimant's arguments are unavailing. *See Singh*, 561 F.3d at 1278-79 (explaining that simply stating an issue exists, without further argument or discussion, constitutes abandonment of that issue).

Further, Claimant maintains that Dr. Steele's opinion should not be entitled to significant weight because he did not have the benefit of reviewing a significant amount of medical evidence. Doc. 23 at 44-45. The ALJ may rely on a non-examining physician's opinion where it is consistent with the medical and opinion evidence. *See* 20 C.F.R. § 404.1527(c)(4). Claimant primarily argues that Dr. Steele's opinion is not entitled to significant weight because he did not consider the effects of pain on Claimant and did not take into account Claimant's mental health issues. *See* Doc. 23 at 44-45. Claimant's assertions are belied by the record and by Dr. Steele's opinion and evaluation report. R. 97-108. Indeed, Dr. Steele reviewed medical records concerning Claimant's complaints of pain and Claimant's mental health issues and, in fact, found that Claimant suffered from both fibromyalgia and post-traumatic stress disorder; impairments involving pain and mental health, respectively. *Id*. To the extent that Claimant again is attempting to argue that the evidence preponderates against the ALJ's decision to give Dr. Steele's opinion significant weight, that argument is unavailing. This Court's role is not to re-weigh the evidence, but to review the ALJ's

decision and determine whether it is supported by substantial evidence. *See Barnes*, 932 F.2d at 1358 ("Even if we find that the evidence preponderates against the Secretary's decision, we must affirm if the decision is supported by substantial evidence.") (citation omitted).

Finally, the Commissioner rightly notes that the ALJ did not "blindly defer" to Dr. Steele's opinion, even though the ALJ gave portions of that opinion significant weight. Doc. 23 at 47. Indeed, in formulating the RFC, the ALJ ultimately found that Claimant was *more* limited than Dr. Steele determined in his evaluation, giving other portions of Dr. Steele's opinion little weight. R. 28; 106.

The ALJ's decision to give portions of Dr. Steele's opinion significant weight is supported by substantial evidence. Claimant has failed to demonstrate that Dr. Steele's opinion is inconsistent with the evidence of record. Therefore, Claimant has failed to demonstrate that the ALJ erred in assigning portions of Dr. Steele's opinion significant weight.

### e. The RFC.

Claimant asserts that the RFC, as determined by the ALJ, was not supported by substantial evidence because the record did not contain a functional limitation assessment for the period of disability that was completed by a treating or examining physician. Doc. 23 at 47-49. Claimant provides no citation to legal authority supporting her proposition. The Commissioner asserts that the ALJ's decision in formulating the RFC is supported by substantial evidence, and that Claimant is conflating and misconstruing the roles of the ALJ and those whose medical opinions the ALJ considers and weighs. *Id.* at 49-51.

The ALJ is responsible for assessing a claimant's RFC. 20 C.F.R. § 404.1527(d)(2) ("Although we consider opinions from medical sources on issues such as . . . your residual functional capacity. . . , the final responsibility for deciding these issues is reserved to the

Commissioner."); 20 C.F.R. § 404.1546(c) ("If your case is at the administrative law judge hearing level. . ., the administrative law judge . . . is responsible for assessing your residual functional capacity."). The RFC must be based on substantial evidence, but an RFC determination does not require a medical opinion. *See Green v. Soc. Sec. Admin.*, 223 F. App'x 915, 923 (11th Cir. 2007) ("Although a claimant may provide a statement containing a physician's opinion of her remaining capabilities, the ALJ will evaluate such a statement in light of the other evidence presented and the ultimate determination of disability is reserved for the ALJ."); *Langley v. Astrue*, 777 F. Supp. 2d 1250, 1258 (N.D. Ala. 2011) ("[T]he Court concludes that the law of this Circuit does not require[ ] an RFC from a physician."); *Gregory v. Astrue*, No. 5:07-cv-19-Oc-GRJ, 2008 WL 4372840, at *8 (M.D. Fla. Sept. 24, 2008) ("A medical opinion is, therefore, not required to validate a RFC finding the by the ALJ.").

Claimant cites no legal authority in relation to this assignment of error and, thus, no legal authority that would require an ALJ's RFC to be validated by record evidence of a functional limitations assessment by a treating or examining medical source. As in many of Claimant's assignments of error, Claimant makes conclusory allegations of error unsupported by legal authority and unconnected to any identified functional limitations. Thus, Claimant's argument is deemed abandoned. *See Singh*, 561 F.3d at 1278-79 (explaining that simply stating an issue exists, without further argument or discussion, constitutes abandonment of that issue). As noted in the foregoing paragraph, the law of this Circuit does not require a functional assessment by a treating or examining medical source as some sort of prerequisite to finding that an RFC is supported by substantial evidence. To the extent that Claimant is asserting that the ALJ failed in his duty to develop the record, that argument is discussed *infra*.

To the extent that Claimant is simply making a broad argument that the RFC is not supported by substantial evidence, that argument is without merit. First, the argument is made in a sweeping and conclusory manner, and the Court deems that argument abandoned. Second, the record evidence provides substantial support for the RFC as determined by the ALJ. In formulating that RFC, the ALJ took into consideration numerous records from a hospital and treating physicians, as well as the opinion of a non-examining consultative physician. R. 22-28. Those records involved opinions and treatment notes related to Claimant's physical and mental impairments. *Id*. The ALJ appropriately weighed the opinions of the medical professionals, followed the regulations, and, as discussed *infra*, complied with his duty to develop the record. *Id*. Claimant was represented by counsel, and testified at the hearing. *Id*. The ALJ discounted Claimant's testimony, and the ALJ's decision as to Claimant's credibility, as discussed *supra*, was supported by substantial evidence. What resulted was an RFC that deemed Claimant capable of light work, and that included both exertional and non-exertional limitations that took into consideration the evidence of record. R. 24. For example, given Claimant's attendance at mental health counseling prior to the date of last insured (R. 26-27), the ALJ included limitations within the RFC restricting Claimant to simple work and restricting Claimant to no more than occasional interaction with the public, supervisors, co-workers. Those mental limitations were included despite the fact that the ALJ determined that Claimant "was only mildly limited by her mental impairment" and gave little weight to the opinion of the medical source related to that counseling (Dr. Patti Hall, Ph. D.). R. 27-28. Further, in the RFC, the ALJ included several exertional limitations related to posture, reach, hazards, and use of upper and lower extremities. R. 24. Those exertional functional limitations are supported by the record as a whole, including by the opinions of Dr. Derbenwick (Claimant's treating physician prior to the date of last insured), Dr. Friedman

(Claimant's treating physician prior to the date of last insured), and Dr. Steele (the non-examining consultative physician); all of whose opinions the ALJ gave significant weight. R. 28. Finally, Claimant identifies no additional functional limitations that the ALJ should have included in the RFC. Thus, even if the Court had found error, it would be harmless. *See Caldwell v. Barnhart*, 261 F. App'x 188, 190 (11th Cir. 2008) (per curiam) ("When . . . an incorrect application of the regulations results in harmless error because the correct application would not contradict the ALJ's ultimate findings, the ALJ's decision will stand.") (citing *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983)). Accordingly, the Court finds that the RFC was supported by substantial evidence.

### f. *Duty to Develop the Record.*

Claimant argues that the ALJ failed to sufficiently develop the record by not obtaining from an examining source an opinion that identifies the physical and mental limitations caused by Claimant's physical and mental impairments. Doc. 23 at 51-53. The Commissioner argues that the ALJ was under no duty to obtain such an opinion, and that Claimant has not shown that she was prejudiced by the ALJ's decision not to obtain such opinions. *Id*. at 54-55.

The ALJ has a basic duty to develop a full and fair record. *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997) (per curiam).[5] This duty generally requires the ALJ to assist in gathering medical evidence, and to order a consultative examination when such an evaluation is necessary to make an informed decision. 20 C.F.R. § 404.1512(b). There must be a showing that the ALJ's failure to develop the record led to evidentiary gaps in the record, which resulted in

---

[5] The basic duty to develop the record rises to a "special duty" where the claimant is not represented during the administrative proceedings. *Brown v. Shalala*, 44 F.3d 931, 934-35 (11th Cir. 1995). Claimant was represented during the administrative proceedings. Therefore, the ALJ, in this case, only had a basic duty to develop the record.

unfairness or clear prejudice, before the court will remand a case for further development of the record. *Graham*, 129 F.3d at 1423 (citing *Brown*, 44 F.3d at 934-35); *see also Jones*, 2015 WL 9694507, at *5 ("It was up to Plaintiff to contact her doctors to obtain medical opinions and Plaintiff cannot now blame the ALJ for failing to do so.").

The ALJ satisfied his duty to develop a full and fair record. The record, as Claimant notes, does not contain any treating or examining source opinions setting forth specific physical or mental limitations relating to the period between the alleged onset date and the date of last insured. Claimant argues that the ALJ should have obtained such evidence. Doc. 23 at 51-53.[6]

It is axiomatic that the ALJ is responsible for determining the claimant's RFC. 20 C.F.R. § 404.1546(c). The ALJ must consider all the evidence, including evidence from treating, examining, and non-examining medical sources, in determining the claimant's RFC. 20 C.F.R. § 404.1545(a)(3). The ALJ had ample information to determine Claimant's RFC, including numerous records from treating physicians and a consultative examination report (Ex. 4F). Thus, the Court finds, under the circumstances of this case, that the ALJ was not required to obtain a treating or examining source opinion setting forth specific physical and mental limitations. *See Gregory*, 2008 WL 4372840, at *8 ("A medical opinion is . . . not required to validate a RFC finding by the ALJ."). Further, Claimant has failed to demonstrate that the lack of a treating or examining source opinion setting forth specific physical and mental limitations resulted in unfairness or clear prejudice. *See* Doc. 23 at 51-53. Nor has Claimant established any prejudice

---

[6] Claimant generally cites several cases in support of her argument, namely *Rease v Barnhardt*, 422 F. Supp. 2d 1334 (N.D. Ga. 2006) and *Volley v. Astrue*, 2008 U.S. Dist. LEXIS 23792 (N.D. Ga. 2008). Claimant provides no pinpoint citations for these cases, which is problematic with respect to *Rease*, which is 46 pages long, and *Volley*, which is 32 pages long. The failure to provide pinpoint citations is reason alone to disregard these decisions. The Court has nevertheless reviewed *Rease* and *Volley* and finds that they do not provide any support for Claimant's argument.

from the ALJ's failure to do so. Thus, in light of the foregoing, the Court finds that Claimant has failed to demonstrate that the ALJ did not develop a full and fair record.

### g. *Consideration of Claimant's Impairments in Combination.*

Claimant asserts that, when the ALJ determined that Claimant could perform light work, the ALJ erred by failing to consider the full effects of her impairments in combination. Doc. 23 at 55-56. Specifically, but in a conclusory manner and without any citation to the record, Claimant argues that the ALJ did not consider the "full force" of her tinnitus and the effect of Claimant's pain "from a mental health standpoint." *Id*. at 56. The Commissioner asserts that the ALJ appropriately considered Claimant's impairments in combination. *Id*. at 56-57.

An ALJ "must consider every impairment alleged." *Gibson v. Heckler*, 779 F.2d 619, 623 (11th Cir. 1986) (internal citations). In sum, "an ALJ's decision must demonstrate through well-articulated factual findings that the ALJ has considered each of a claimant's alleged impairments, singly and in combination, and the ALJ must address the degree of limitations, if any, caused by the combined effect of those impairments." *Vitalis v. Comm'r of Soc. Sec.*, No. 6:12-cv-831-Orl-31GJK, 2013 WL 3070869, at *2 (M.D. Fla. June 17, 2013) (citing *Gibson*, 779 F.2d at 623); s*ee also Walker v. Bowen*, 826 F.2d 996, 1001-02 (11th Cir. 1987) ("it is the duty of the ALJ to make specific and well-articulated findings as to the effect of the combination of impairments and to decide whether the combined impairments cause the claimant to be disabled.") (internal quotations omitted).

Here, the ALJ found that Claimant had a number of severe impairments, and identified no non-severe impairments. R. 22. Claimant asserts that the ALJ erred by failing to consider the "full force" of her tinnitus and the effect of Claimant's pain "from a mental health standpoint." *Id*. at 56. Claimant's argument is conclusory, contains no record citations supporting it, and fails entirely

to state what, if any, functional limitations the ALJ ignored or failed to consider in relation to her tinnitus and pain. Thus, the Court finds that Claimant's arguments are unavailing. *See Singh*, 561 F.3d at 1278-79 (explaining that simply stating an issue exists, without further argument or discussion, constitutes abandonment of that issue).

Further, the ALJ's decision reflects that he did consider the effects of all of Claimant's severe impairments, both individually and in combination. R. 24-28. Claimant identifies no impairment that the ALJ actually failed to consider – she simply alleges that the ALJ failed to consider the "full force" of those impairments. The remainder of Claimant's arguments appear to be a rehashing of issues raised earlier in her brief: The ALJ determined that Claimant's statements concerning the intensity, persistence, and limiting effects of her symptoms were "not entirely credible" and, as has already been stated, that determination was supported by substantial evidence. Thus, to the extent Claimant is asserting that the ALJ did not take into account alleged impairments derived from Claimant's testimony, that argument is unavailing. To the extent that Claimant is asserting that the ALJ did not take into account alleged impairments that could have been identified had the ALJ ordered a consultative examination, that argument is unavailing, as the Court has already determined that the ALJ complied with his duty to develop the record. In sum, although Claimant's argument in regard to this assignment of error is less than clear, suffice it to say that the Court has reviewed the record as a whole and finds that the ALJ considered all of Claimant's impairments, individually and in combination.

### h. The Post-Hearing Opinion of Dr. Oh.

Claimant asserts, without any citation to legal authority, that the ALJ erred by not considering the January 6, 2014 mental health functional capacity assessment by Dr. Oh, a psychiatrist that began treating Claimant after the date of last insured. Doc. 23 at 57-58. Dr. Oh's

assessment, unlike the medical records post-dating the date of last insured that have already been discussed herein, was a retrospective assessment purporting to state Claimant's functional limitations as of the date of last insured, September 30, 2011. R. 1504-06. That said, Claimant concedes that she did not forward Dr. Oh's assessment to the ALJ prior to the hearing, which took place on March 17, 2015. Doc. 23 at 57; R. 20.

What Claimant does not identify for the Court, but what the Commissioner points out, is that (based on the record before the Court) Claimant actually submitted Dr. Oh's assessment to the Commissioner on November 3, 2015 – more than six months after the ALJ issued the April 22, 2015 decision at issue in this case. R. 1504 (noting the fax stamp on the assessment as received by the Commissioner). Thus, it appears that Claimant is asserting that the ALJ should have considered in his decision an assessment that he never had, and that Claimant failed to provide until six months after the ALJ issued his decision; an argument that is unavailing on its face. *See Bussard v. Comm'r of Soc. Sec.*, No. 6:13-cv-1953-Orl-GJK, 2015 WL 1456663, *7 n.11 (M.D. Fla. Mar. 30, 2015) (noting that evidence was presented to the Commissioner following the ALJ's decision, and the ALJ did not have an opportunity to weigh the evidence, "and, therefore, [the ALJ] could not have committed any error with respect thereto").

Further, Claimant never mentions that the Appeals Council actually did consider Dr. Oh's assessment in the Appeals Council's March 25, 2016 decision rejecting reconsideration of Claimant's application. *See* Doc. 23 at 57-58. Claimant never asserts that the Appeals Council erred in its handling of Dr. Oh's assessment. *See Lawton v. Comm'r of Soc. Sec.*, 431 F. App'x 830, (11th Cir. 2011) (finding that even a passing reference to the Appeals Council's decision is not sufficient to preserve an argument for review); *see also Crawford*, 363 F.3d at 1161 (refusing to consider an argument that the claimant failed to raise before the district court). Despite

Claimant's failure to challenge the Appeals Council's decision, the Court has reviewed that decision and finds that the Appeals Council appropriately considered Dr. Oh's assessment, and that the Appeals Council's decision is supported by substantial evidence.

Finally, Claimant identified no opinions or functional limitations contained within Dr. Oh's assessment that the ALJ erred by not weighing. *See Singh*, 561 F.3d at 1278-79 (explaining that simply stating an issue exists, without further argument or discussion, constitutes abandonment of that issue). Thus, Claimant's conclusory assertion that the ALJ erred by not weighing Dr. Oh's assessment is unavailing.

## V. <u>CONCLUSION</u>.

For the reasons stated above, it is **ORDERED** that:

1. The final decision of the Commissioner is **AFFIRMED**; and

2. The Clerk is directed to enter judgment for Commissioner and close the case.

**DONE** and **ORDERED** in Orlando, Florida on September 27, 2017.

DANIEL C. IRICK
UNITES STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record

The Court Requests that the Clerk
Mail or Deliver Copies of this order to:
The Honorable Bernard Porter
Administrative Law Judge
c/o Office of Disability Adjudication and Review
SSA ODAR Hearing Ofc.
Desoto Bldg., Suite 400
8880 Freedom Crossing Trail
Jacksonville, FL 32256-1224